Rockingham
No. 2004-241

IN THE MATTER OF ROBERT L. GOLDMAN AND
MARY E. (GOLDMAN) ELLIOTT

Argued: November 30, 2004
Opinion Issued: March 2, 2005

*Marshall Law*, of East Kingston (*Keri J. Marshall* on the brief), and *Robert E. Ducharme*, of Stratham, orally, for the petitioner.

*Law Office of Patrick J. Devine, P.C.*, of Plaistow (*Patrick J. Devine* on the brief and orally), for the respondent.

BRODERICK, C.J. This case comes before us on an interlocutory transfer without ruling. SUP. CT. R. 9. The Superior Court (*Coffey, J.*) submits for our resolution the following question:

> Does the Amendment of RSA 458:17 preclude the Court from considering contribution of college educational expenses for an adult child when the Motion [for college contributions] was filed prior to the enactment of the Amendment but the hearing was scheduled after the effective date of the Amendment?

We respond in the affirmative.

The petitioner, Robert L. Goldman, and the respondent, Mary E. (Goldman) Elliott, were divorced in 1991. They have two children, Elliott, born on August 16, 1982, and Gillian, born on February 11, 1986. In a court order issued while the children were still minors, the court indicated that it made no order regarding college, trusting that the parents could discuss and agree upon those issues. At the time, the trial court had authority under RSA 458:17 and RSA 458:20 to order divorced parents to contribute toward their children's college expenses. *See LeClair v. LeClair,* 137 N.H. 213, 218-20 (1993); *In the Matter of Breault & Breault,* 149 N.H. 359, 362 (2003). The record contains no further order on the matter.

In August 2003, the respondent filed a motion to bring forward and modify existing child support, in which she also sought contribution for college expenses for Elliot, who was twenty-two years old at the time and enrolled as a full-time student at the University of New Hampshire. The petitioner objected and a hearing was scheduled for March 11, 2004. Effective February 2, 2004, the legislature amended RSA 458:17 by inserting the following language:

> No child support order shall require a parent to contribute to an adult child's college expenses or other educational expenses beyond the completion of high school.

RSA 458:17, XI-a (2004). Thereafter, the trial court submitted this interlocutory transfer.

The respondent argues that applying the amendment to preclude the trial court's consideration of her motion seeking college contributions would violate the constitutional proscription against retrospective application of laws. *See* N.H. CONST. pt. I, art. 23. She contends that because her motion was pending at the time the new legislation took effect, she had a vested right to seek contributions from the petitioner for their son's college expenses. According to the respondent, the new legislation

"must only be applied prospectively to causes of actions that arise after its enactment." The petitioner contends, however, that applying the new legislation to the respondent's pending motion would not impair any vested right because no court order or agreement between the parties had obligated either of them to contribute to their children's post secondary education. He contends that the new law affects only the remedy of seeking a discretionary award of college contributions, and, thus, its application in this case would not offend the State Constitution.

Before considering whether application of new legislation to a particular matter violates the constitutional proscription against retrospective laws, we first determine whether the legislature intended the new law to apply prospectively or retroactively. *See Eldridge v. Eldridge*, 136 N.H. 611, 613 (1993). In this case, the legislature expressly stated that the amendment shall take effect upon its passage, *i.e.*, February 2, 2004. Laws 2004, 1:4. Thus, it is clear that, at a minimum, the legislature intended to preclude the trial court from issuing new court orders requiring a parent to contribute to an adult child's college or other educational expenses on or after February 2, 2004. *See State v. Comeau*, 142 N.H. 84, 86-87 (1997). Accordingly, unless application of RSA 458:17, XI-a to the case before us violates our State's constitutional proscription against retrospective laws, it would bar the trial court from considering the respondent's motion for college contributions.

■ ■ Part I, Article 23 of our State Constitution provides that "[r]etrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." In 1826, we interpreted Article 23 to mean that "every statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." *Burrage v. N.H. Police Standards Council*, 127 N.H. 742, 746 (1986) (citing *Woart v. Winnick*, 3 N.H. 473, 479 (1826)). When engaging in an Article 23 analysis, we distinguish new laws that affect substantive rights and liabilities from those that solely affect procedures or remedies enforcing those rights. *See Norton v. Patten*, 125 N.H. 413, 417 (1984). If application of a new law would adversely affect an individual's substantive rights, it may not be applied retroactively. *See LaBarre v. Daneault*, 123 N.H. 267, 272 (1983); *Lozier v. Brown Company*, 121 N.H. 67, 70-71 (1981). When a statute is remedial or procedural in nature, however, it may be applied to cases

pending at the time of enactment. *Gelinas v. Mackey*, 123 N.H. 690, 695 (1983).

■ Application of this dichotomy between substantive rights and liabilities versus procedures and remedies is not, however, a simple matter. Indeed, we long ago warned against using a formulaic approach to Article 23 analysis:

> Retrospective laws are unconstitutional and void, because they are injurious, oppressive, and unjust. That is the plain and simple rule laid down in the bill of rights. And any generalization founded on the distinction between right and remedy, is attended with some danger, because of the difficulty of drawing that distinction so accurately as not to impair the force of the constitutional prohibition.
>
> ... [W]hen we have merely ascertained that a statute affects the remedy in some sense or other, we have made very little progress in the inquiry whether it affects a right, that is, whether it is unjust on general principles. If a certain change can be made in the remedy, it is because it can be justly made: if a change cannot be made in the right, it is because it cannot be justly made.
>
> ... [T]he test given by the bill of rights is, not the distinction between right and remedy, but the distinction between right and wrong.

*Kent v. Gray*, 53 N.H. 576, 579-80 (1873); *see also Eldridge*, 136 N.H. at 613 ("the question of retrospective application rests on a determination of fundamental fairness"). Thus, while the demarcation between substantive rights and liabilities and procedures and remedies provides a helpful guidepost, ultimately, we must discern "the nature of the rights affected by the [new] act," *Farnum's Petition*, 51 N.H. 376, 380 (1871), to assess whether its application to a particular matter offends the constitution.

Further, we are mindful that the legislature has the power to change, modify and repeal existing law, and to enact new laws, and that

> the individual citizen, with all his rights to protection, has no vested interest in the existing laws of the State as precludes their amendment or repeal by the legislature; nor is there any implied obligation on the part of the State to protect its citizens against incidental injury occasioned by change in the law.

*State v. Burr*, 142 N.H. 89, 93-94 (1997) (quotation omitted). "Citizens have no general right to the continuance even of prior substantive law." *Town of Nottingham v. Bonser*, 131 N.H. 120, 134-35 (1988). The interplay between the legislature's authority to change existing laws and the prohibition against retrospective legislation can be best summed up as follows:

> Unless otherwise inhibited by either the State or Federal Constitutions, the Legislature may change existing laws, both statutory or common, at its pleasure, but in so doing, it may not deprive a person of a property right theretofore acquired under existing law. Those rights are designated as vested rights, and to be vested, a right must be more than a mere expectation based on an anticipation of the continuance of existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from the demand of another. If, before a right becomes vested in a person, the law upon which it is based is repealed, that particular person no longer has a remedy to enforce his claim, and if final relief has not been granted to him on the enforcement of a demand before such repeal, then no relief can be granted on his demand after the effective date of the repeal.

*Aetna Ins. Co. v. Richardelle*, 528 S.W.2d 280, 284 (Tx. Civ. App. 1975).

■ We conclude that the respondent's motion did not secure her a vested right under the prior law. The respondent merely pursued an opportunity to seek a discretionary award for college contributions, and "a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right," *Southwestern Bell v. Kansas Corp. Comm'n*, 29 P.3d 424, 430 (Kan. Ct. App. 2001). "A perfect vested right can be no other than such as is not doubtful, or depending on any contingency, but absolute, fixed and certain." *Lakeman v. Moore*, 32 N.H. 410, 413 (1855). The respondent's motion did not transform her hope for a discretionary college contribution award into a fixed, certain and absolute right that the court consider her request and issue an award. Indeed, "[i]t is almost universally recognized that if a statute giving a special remedy is repealed, without a saving clause in favor of pending suits, all suits must stop where the repeal finds them; and, if final relief has not been granted before the repeal goes

into effect, it cannot be granted thereafter." *Aetna Ins. Co.*, 528 S.W.2d at 284. Because the respondent's opportunity to have the trial court consider ordering the petitioner to contribute to their adult son's college expenses derived solely from statute and no final judgment had been rendered, the statutory amendment "deprive[d] the court of jurisdiction over the subject matter." *Id.*

██ We acknowledge that we have previously held that the legislature "cannot constitutionally enact laws that affect existing causes of action, regardless of whether suit upon that action has not been filed." *Lozier*, 121 N.H. at 70. However, a cause of action, in the context of Article 23 analysis, is a suit or action contested before a court "which has for its object the recovery of private or civil rights, or compensation for their infraction." *Farnum's Petition*, 51 N.H. at 383. The respondent's motion was not of that nature. Accordingly, because we conclude that application of the amendment does not offend the constitutional proscription under Article 23 against retrospective laws, we answer the question transferred in the affirmative.

*Remanded.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.